UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 3:24-CR-00169 |
| RODARI SAM, | (MEHALCHICK, J.) |
| Defendant. | |

**MEMORANDUM**

Pending before the Court are Defendant Rodari Sam's ("Sam") motions to suppress statements obtained in violation of his *Miranda* rights and evidence obtained during an allegedly unconstitutional search of Sam's vehicle. (Doc. 37; Doc. 39). For the following reasons, Sam's motion to suppress statements (Doc. 37) is **GRANTED**[1] and Sam's motion to suppress evidence (Doc. 39) is **DENIED**.

**I.    FACTUAL BACKGROUND**

The following factual background is supported by the record as established at the April 18, 2025, evidentiary hearing. On March 7, 2024, Pennsylvania State Trooper Bryan Kolodziej ("Trooper Kolodziej") initiated a traffic stop of Sam's vehicle, a black Lexus sedan. (Doc. 57, at 6-11; Exhibit A DVD). According to Trooper Kolodziej, prior to the stop, he was monitoring traffic on Interstate 80. (Doc. 57, at 6-7). Trooper Kolodziej testified that he was

---

[1] On March 17, 2025, the Government filed a response to Sam's motion to suppress statements conceding that Sam was not read his *Miranda* rights and stating that the Government will not introduce any statements made by Sam after he was placed in custody. (Doc. 46). Because the Government does not oppose Sam's motion to suppress statements, the Court **GRANTS** Sam's motion. (Doc. 37).

parked in a crossover observing traffic near Interstate 80 Exit 298 when he observed a black Lexus drive past him. (Doc. 57, at 6-8). Trooper Kolodziej testified that this Lexus appeared to be traveling above the speed limit, so he began to follow it. (Doc. 57, at 8-9). Trooper Kolodziej turned on his dashcam while he was following the Lexus. (Doc. 57, at 9; Exhibit A DVD, 12:09:10-12:12:23). According to the Government and Trooper Kolodziej, Trooper Kolodziej "paced" the Lexus by matching its speed for 3/10ths of a mile and observed the car going 80 to 81 miles per hour in a 65 mile per hour zone. (Doc. 57, at 9-10; Doc. 60, at 3). Trooper Kolodziej observed the Lexus switch lanes two times prior to merging onto Interstate 380 northbound. (Doc. 57, at 9-10; Exhibit A DVD, 12:10:08-12:10:26). The Government and Trooper Kolodziej contend that the Lexus failed to use a turn signal while switching lanes. (Doc. 57, at 10; Doc. 60, at 3).

    Trooper Kolodziej initiated a traffic stop on Interstate 380 near the Mount Pocono exit. (Exhibit A DVD, 12:12:23-12:12-40). Trooper Kolodziej testified that he purposefully pulled the Lexus over near an exit so that the Lexus would have ample room to safely pull to the side of the road. (Doc. 57, at 24-25). However, Trooper Kolodziej testified that the Lexus pulled over close to the fog line despite having room to pull away further from the traffic lanes. (Doc. 57, 24-25). Once the Lexus stopped moving, Trooper Kolodziej exited his vehicle and approached the Lexus from the passenger side. (Exhibit A DVD, 12:13:10-12:13:16). Trooper Kolodziej leaned down towards the passenger window and informed Sam, the Lexus's driver, that he was speeding. (Exhibit A DVD, 12:13:15-10:13:22). According to Trooper Kolodziej, he immediately smelled marijuana emanating from the vehicle when he initiated contact with Sam. (Doc. 57, at 11-12). Trooper Kolodziej then asked Sam for his license and registration, which Sam presented after going through papers in his vehicle. (Exhibit A DVD, 12:13:30-

12:14:19). Trooper Kolodziej testified that Sam appeared to be positioning his body to conceal a black bag while he was searching for his papers. (Doc. 57, at 22-23).

After receiving Sam's papers, Trooper Kolodziej asked Sam to exit his vehicle and come to the passenger side of Trooper Kolodziej's patrol vehicle. (Exhibit A DVD, 12:14:56-12:15:24). Sam then exited his vehicle and followed Trooper Kolodziej to the patrol vehicle where Sam waited near the passenger window while Trooper Kolodziej searched for Sam on the patrol vehicle's computer system. (Exhibit A DVD, 12:15:26-12:16:24). While Sam was standing outside the patrol car, Trooper Kolodziej asked Sam "how much weed do you have" to which Sam responded, "I have a spliff." (Exhibit A DVD, 12:19:08-12:19:17). Trooper Kolodziej then asked Sam if he had any other drugs in the vehicle and Sam said he did not. (Exhibit A DVD, 12:19:17-12:19:34). Trooper Kolodziej testified that prior to asking these questions, he saw on his computer that Sam had prior convictions for felony drug possessions and murder. (Doc. 57, at 30-31).

Trooper Kolodziej asked Sam if he could search Sam's vehicle. (Exhibit A DVD, 12:20:20 -12:20:46). In response, Sam stated "you can search." (Exhibit A DVD, 12:20:46-12:20:47). Trooper Kolodziej confirmed by asking: "I can search?" (Exhibit A DVD, 12:20:46-12:20:47). Sam responded, "yes." (Exhibit A DVD, 12:20:46-12:20:47). Trooper Koldoziej informed Sam that he needed to wait for another officer to arrive at the scene before searching the vehicle. (Exhibit A DVD, 12:20:47-12:20:56). Trooper Kolodziej then exited the vehicle and asked Sam "so do you give me consent to search your car?" (Exhibit A DVD, 12:20:47-12:20:56). Sam responded, "it's in the ashtray." (Exhibit A DVD, 12:21:50-12:21:54). Shortly thereafter, a second officer arrived at the scene and Trooper Kolodziej searched the entire vehicle. (Exhibit A DVD, 12:22:12-12:26:03). Trooper Kolodziej testified

that he found marijuana in the vehicle's ashtray and other controlled substances in a black bag. (Doc. 57, at 38-41). After searching the vehicle, Trooper Kolodziej arrested Sam. (Exhibit A DVD, 12:26:04-12:26:16).

On July 9, 2024, a federal grand jury indicted Sam of one count of Possession with Intent to Distribute a Controlled Substance Analogue and a Controlled Substance under the Controlled Substances Act. (Doc. 1). Sam entered a not guilty plea on July 29, 2024. (Doc. 16). Sam filed a motion to suppress the search of his vehicle on January 24, 2025, along with a brief in support. (Doc. 39; Doc. 40). On April 2, 2025, the Government filed a brief in opposition. (Doc. 47). On April 18, 2025, the Court held an evidentiary hearing. On June 5, 2025, Sam and the Government filed their post hearing briefs. (Doc. 60; Doc. 61). On July 3, 2025, Sam filed a reply brief. (Doc. 66). The Government opted not to file a reply brief. Accordingly, the motion is ripe and ready for disposition.

**II.    STANDARD OF REVIEW**

The Fourth Amendment protects against unlawful search and seizure. U.S. CONST. amend. IV. "The United States Supreme Court has held that stopping a car and detaining its occupants is a seizure under the Fourth Amendment." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). A search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In most cases, to conduct a lawful search, law enforcement must obtain a warrant supported by probable cause. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal quotations omitted). An affidavit in support of a search warrant "must

contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

Absent a search warrant, law enforcement may only conduct a search if a recognized exception to the warrant requirement applies. *See Lange v. California*, 141 S.Ct. 2011, 2017 (2021). "A well-established exception to the Fourth Amendment's warrant requirement permits an officer to 'conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). This exception applies to traffic stops where an officer has a reasonable suspicion of a traffic law violation. *Lewis*, 672 F.3d at 237. "Where reasonable suspicion for the traffic stop is lacking, the evidentiary fruits of the traffic stop must be suppressed." *Lewis*, 672 F.3d at 237. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123. Reasonable suspicion may be developed during the first few minutes of a traffic stop as the officers are carrying out the stop's mission. *See Garner*, 961 F.3d at 271-72. Additionally, in developing reasonable suspicion, law enforcement may rely on their experience and training. *See Garner*, 961 F.3d at 272. A proper analysis of reasonable suspicion requires the court to analyze "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

In *United States v. Rodriguez*, the United States Supreme Court held that law enforcement cannot lawfully extend the duration of a traffic stop beyond its original "mission" unless there is reasonable and articulable suspicion of criminal activity beyond the

5

initial traffic violation. 575 U.S. 348, 357-58 (2015) (quotations added). "[A]n officer's mission when making a traffic stop includes determining 'whether to issue a traffic ticket' and making 'ordinary inquiries incident to the traffic stop.'" *United States v. Garner*, 961 F.3d 264, 270 (3d Cir. 2020) (quoting *Rodriguez*, 575 U.S. at 355 (internal quotations omitted)). Considering *Rodriguez*, the Third Circuit has provided a two-step approach for evaluating if a traffic stop violates the Fourth Amendment. *United States v. Green*, 897 F.3d 173 (3d Cir. 2018). First, the court must establish the "*Rodriguez* moment" by determining "when the stop was 'measurably extend[ed].'" *Green*, 897 F.3d at 179 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). Second, the court must determine "whether the facts available to the officer up to the moment established reasonable suspicion of criminal activity." *United States v. Stewart*, No. 22-3014, 2024 WL 390109, at *2 (3d Cir. Feb. 2, 2024); *Green*, 897 F.3d at 179. After the *Rodriguez* moment, "nothing later in the stop can inform our reasonable suspicion analysis." *Green*, 897 F.3d at 182.

When challenging a traffic stop as an unlawful search and/or seizure, the defendant initially has the burden of proof. *United States v. Headen*, 264 F. App'x 244, 246 (3d Cir. 2008). Upon the establishment of the basis of defendant's motion, "the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). "Here, because the seizure at issue occurred without a warrant, the Government bears the burden of demonstrating reasonableness." *United States v. Rivera-Raposo*, No. 3:22-CR-199, 2023 WL 6460499, at *6 (M.D. Pa. Oct. 3, 2023); *see United States v. Clark*, 902 F.3d 404, 409 (3d Cir. 2018).

**III.    DISCUSSION**

Sam first asserts that evidence obtained from the search of his vehicle should be

6

suppressed because Trooper Kolodziej violated his rights under the Fourth Amendment by stopping his vehicle without a reasonable suspicion of a traffic violation. (Doc. 40, at 4-5). Sam next argues that even if the Court finds that the initial traffic stop was constitutional, Trooper Kolodziej exceeded the scope of the stop when he "veered away from the purpose of the stop." (Doc. 40, at 5). Finally, Sam contends that Trooper Kolodziej's search of his vehicle was unconstitutional because Sam only consented to Trooper Kolodoziej searching his vehicle's ashtray and Trooper Kolodziej searched the entire vehicle. (Doc. 40, at 5). The Court will address each issue in turn.

### A.  THE INITIAL TRAFFIC STOP

Sam argues that Trooper Kolodziej did not have a reasonable suspicion of a traffic violation to justify pulling Sam over. (Doc. 40, at 5-6). The Government counters that Trooper Kolodziej had a reasonable suspicion that Sam was speeding and failed to use his turn signal while changing lanes. (Doc. 47, at 11-13).

A police officer may conduct a traffic stop if the officer has "a reasonable suspicion that the stoppee has violated a traffic law." *United States v. Jones*, 506 F. App'x 128, 131 (3d Cir. 2012). Even if a police officer is ultimately mistaken over whether a traffic violation occurred, the "officer's mistaken, but objectively reasonable, belief that a traffic violation occurred [can support] a traffic stop." *United States v. Leal*, 235 F. App'x 937, 939 (3d Cir. 2007) (citing *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999)). Minor discrepancies in an officer's evidentiary testimony and an officer's "subjective motivation for initiating the traffic stop are irrelevant" so long as the officer reasonably determined a traffic violation occurred. *Leal*, 235 F. App'x at 939.

 Pennsylvania law prohibits motorists from driving above the posted speed limit. 75

Pa. Stat. and Cons. Stat. Ann. § 3362. Pennsylvania law also prohibits motorists from "mov[ing] from one traffic lane to another. . . without giving an appropriate signal." 75 Pa. Stat. and Cons. Stat. Ann. § 3334. An officer may initiate a traffic stop in Pennsylvania if they observe a motorist speeding or failing to use their turn signal. *See United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020) (an officer may pull over a motorist for speeding); *see also United States v. Booker*, 237 F. App'x 782, 783 (3d Cir. 2007) (nonprecedential) (an officer may pull over a motorist for failing to use a turn signal).

Trooper Kolodziej's dashcam footage shows Trooper Kolodziej following Sam on Interstate 80 for over a minute at speeds faster than other vehicles on the road. (Exhibit A DVD, 12:09:10-12:10:29). The footage also shows Sam change lanes three times, and the footage only shows a turn signal being used during one of those lane changes. (Exhibit A DVD, 12:10:08-12:10:26). Trooper Kolodziej testified that he believed Sam had violated traffic laws because he had "paced" Sam by matching his speed for 3/10ths of a mile at 80 miles per hour in a 65 miles per hour zone and because he saw Sam change lanes without using a turn signal. (Doc. 57, at 9-10, 65-67). Based on this, the circumstances suggest Trooper Kolodziej had a reasonable belief that a traffic violation occurred, and Trooper Kolodziej was permitted to initiate a traffic stop. See *Jones*, 506 F. App'x at 131; *see also Leal*, 235 F. App'x at 939.

Sam avers that the Court should not credit Trooper Kolodziej's testimony regarding Sam's alleged speeding because the dashcam footage shows that Trooper Kolodziej was not traveling at the same speed as Sam's vehicle on Interstate 80. (Doc. 61, at 13-15; Doc. 66, at 1-6). According to Sam, because the vehicles were traveling at different speeds, Trooper Kolodziej could not have accurately "paced" Sam's vehicle. (Doc. 61, at 13-15; Doc. 66, at

1-6). Sam further argues that Pennsylvania law does not require a turn signal prior to changing lanes but rather only requires a turn signal to be used at some point during a lane change. (Doc. 61, at 15; Doc. 66, at 5-6). Sam asserts that the dashcam footage shows a truck blocking Trooper Kolodziej's view of Sam's vehicle while Sam was changing lanes and concludes Trooper Kolodziej could not have determined that Sam failed to use a turn signal. (Doc. 61, at 13-15; Doc. 66, at 1-6). These arguments are unavailing. First, the dashcam footage shows Trooper Kolodziej traveling at comparable speeds to Sam and Sam traveling at significantly faster speeds than other vehicles on the road. (Exhibit A DVD, 12:09:10-12:10:29). As such, even if Trooper Kolodziej did not accurately pace Sam, Trooper Kolodziej's mistake would not negate his reasonable suspicion that Sam was speeding. *See Leal*, 235 F. App'x at 939 (explaining an officer may have a reasonable suspicion of a traffic violation even if he was mistaken whether one occurred). Similarly, even if Sam did use his turn signal while his vehicle was obscured by the truck, Sam's lane changes can partly be seen in the dashcam footage and the footage does not show Sam using a turn signal during two of his lane changes. (Exhibit A DVD, 12:10:08-12:10:26). Any mistake by Trooper Kolodziej about whether Sam turned on his turn signal after already initiating his lane changes would not negate his reasonable suspicion that Sam violated traffic laws. *See Leal*, 235 F. App'x at 939. Accordingly, the Court finds that Trooper Kolodziej's traffic stop did not violate the Fourth Amendment, and the Court will not suppress evidence Trooper Kolodziej obtained as a result of the stop.

    B.    THE EXTENSIONS OF THE TRAFFIC STOP

Sam argues that Trooper Kolodziej unconstitutionally extended the traffic stop by asking Sam to exit his vehicle, conducting a criminal records search, and asking Sam how much marijuana he had. (Doc. 40, at 6-8). According to Sam, Trooper Kolodziej did not have

a reasonable suspicion to extend the traffic stop beyond addressing the traffic violation. (Doc. 40, at 6-8; Doc. 61, at 5-10). The Government counters that Trooper Kolodziej had a reasonable suspicion of criminal activity sufficient to extend the traffic stop because Trooper Kolodziej smelled marijuana and observed Sam acting suspiciously. (Doc. 47, at 15-16; Doc. 60, at 4-5).

An officer may prolong a traffic stop longer than is necessary to address a traffic violation where they have a reasonable and articulable suspicion of criminal activity beyond the traffic violation. *See United States v. Byrd*, 813 F. App'x 57, 60 (3d Cir. 2020) (nonprecedential). "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Further, nervous or evasive conduct by a suspect may provide additional support for an officer's reasonable, articulable suspicion of criminal activity. *See Byrd*, 813 F. App'x at 60.

Trooper Kolodziej testified that he smelled marijuana "immediately upon contact [with Sam]." (Doc. 57, at 11). Trooper Kolodziej further testified that he was familiar with the smell of marijuana because the Police Academy performed a controlled burn. (Doc. 57, at 11-12). The dashcam footage supports Trooper Kolodziej's claim that he smelled marijuana because Trooper Kolodziej knew to ask how Sam how much marijuana he had. (Exhibit A DVD, 12:19:08-12:19:17). Trooper Kolodziej smelling marijuana emanating from Sam's vehicle alone is sufficient to create a reasonable suspicion of criminal activity. *See Ramos*, 443 F.3d at 308. Beyond the smell of marijuana, Trooper Kolodziej testified that Sam appeared to be shifting his body to cover the vehicle's center console and parked his vehicle right next to the fog line which Trooper Kolodziej testified indicates a suspect is trying to rush the traffic

stop. (Doc. 57, at 23). This evidence of nervous and evasive conduct further supports Trooper Kolodziej's reasonable suspicion. *See* Byrd, 813 F. App'x at 60.

Sam argues that Trooper Kolodziej did not have a reasonable suspicion of criminal activity because Trooper Kolodziej could only have recognized the smell of burnt marijuana and Sam was traveling from a state where marijuana is legal.[2] (Doc. 61, at 5-10). However, possession of marijuana is a crime in Pennsylvania where the traffic stop occurred. 35 Pa. Stat. Ann. § 780-113. Even if Trooper Kolodziej only smelled "burnt marijuana" as Sam contends, the smell of marijuana emanating from a suspect's vehicle creates a reasonable suspicion of illegal marijuana possession. *See* United States v. Outlaw, 138 F.4th 725, 729 (3d Cir. 2025) (stating that the odor of marijuana emanating from a specific vehicle with a single person in it creates not only a reasonable suspicion, but "articulable and particularized" probable cause); *see also* Ramos, 443 F.3d at 308. Accordingly, Trooper Kolodziej had a reasonable suspicion of criminal activity that permitted him to extend the traffic stop by asking Sam to exit his vehicle, conducting a criminal records search, and asking Sam how much

---

[2] Sam also argues that Trooper Kolodziej violated Sam's Fourth Amendment rights by sticking his nose in Sam's vehicle to smell for marijuana. (Doc. 61, at 5-8). Sam relies on the Tenth Circuit's decision in *United States v. Montes-Ramos*. 347 F. App'x 383, 387 (10th Cir. 2009). In *Montes-Ramos*, the court found that an officer sticking his head into a vehicle to smell constitutes a search. 347 F. App'x at 387. According to Sam, *Montes-Ramos* stands for the proposition that a police officer may not invade a car's airspace without a particularized suspicion that a vehicle contains marijuana. (Doc. 61, at 5-7). *Montes-Ramos* is distinguishable because it involved an officer who purposefully stuck his head into a suspect's vehicle after seeing suspicious objects in the back seat. 347 F. App'x at 388; *see also* United States v. Rivera-Raposo, No. 3:22-CR-199, 2023 WL 6460499, at *13 (M.D. Pa. Oct. 3, 2023) (distinguishing *Montes-Ramos*). Here, Trooper Kolodziej testified that he first smelled marijuana as soon as he came into contact with Sam, so he did not observe the odor by sticking his head in Sam's vehicle. (Doc. 57, at 11-12). Further, the dashcam footage does not show Trooper Kolodiej purposefully sticking his head into Sam's vehicle but rather leaning down to talk to Sam. (Exhibit A DVD, 12:13:10-12:15:46). An officer does not violate the Fourth Amendment by leaning down to speak to a suspect during a traffic stop. *See* Rivera-Raposo, 2023 WL 6460499, at *14.

11

marijuana he had in the car.[3] The Court will not suppress evidence from the search of Sam's vehicle based on Trooper Kolodziej's extensions of the search.

C. THE SEARCH OF SAM'S VEHICLE

Sam avers that Trooper Kolodziej's search of Sam's vehicle violated the Fourth Amendment because Sam only consented to Trooper Kolodziej searching the vehicle's ashtray. (Doc. 40, at 9). The Government counters that Sam unambiguously gave Trooper Kolodziej consent to search his entire vehicle. (Doc. 60, at 5-6).

"If an individual consents to a search, the government may undertake a search without a warrant or probable cause, and any evidence discovered during such a search may be seized and admitted at trial." *United States v. Amadioha*, 37 F. App'x 594, 595 (3d Cir. 2002). "The

---

[3] Sam also argues that Trooper Kolodziej violated Sam's Fourth Amendment and Fourteenth Amendment Due Process rights by asking him to get exit his vehicle under dangerous conditions. (Doc. 40, at 7; Doc. 61, at 10-12). According to Sam, Trooper Kolodziej's dashcam footage shows trucks speeding past Sam's passenger door as Trooper Kolodziej was asking him to get out of the car. (Doc. 61, at 10-12). An officer may ask a suspect to exit their vehicle during a traffic stop even where "the officer had no reason to suspect foul play from the particular driver at the time of the stop." *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332-33 (1977). Sam fails to cite any caselaw supporting his proposition that an officer violates the Fourth Amendment by asking a suspect to exit their vehicle during a traffic stop simply because there are passing vehicles on the road. Accordingly, Trooper Kolodziej's request did not violate the Fourth Amendment. Regarding Sam's claim that Trooper Kolodziej violated Sam's due process rights, courts are "extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." *United States v. Voigt*, 89 F.3d 1050, 1065 (3d Cir. 1996). A due process defense based on an officer's conduct is reserved only the "most intolerable government conduct." *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir. 1982). Here, while there were cars passing by when Trooper Kolodziej asked Sam to exit his vehicle, Trooper Kolodziej also told Sam to be careful and watch the traffic. (Exhibit A DVD, 12:15:17-12:15:24). Further, Trooper Kolodziej testified that he purposefully chose to pull Sam over near a highway exit because the area gave Sam ample room to pull over further away from incoming traffic, but Sam nonetheless pulled over close to the fog line. (Doc. 57, at 24-25). Trooper Kolodziej's conduct was not "the most intolerable government conduct". *Jannotti*, 673 F.2d at 608. To hold otherwise would run counter to Supreme Court precedent giving police officers wide latitude to ask suspects to exit their vehicles during traffic stops. *See Mimms*, 434 U.S. at 109.

12

standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Fla. v. Jimeno*, 500 U.S. 248, 251 (1991). Where a suspect consents to an officer searching their vehicle for drugs, it is reasonable to assume the suspect "consent[ed] to search containers within that [vehicle] which might bear drugs." *Jimeno*, 500 U.S. at 251. A suspect may withdraw his consent after it is given, however, "[o]nce it has been established that a suspect has voluntarily consented to a search, it is his burden to demonstrate that he has withdrawn that consent by pointing to an act or statement that an objective viewer would understand as an expression of his desire to no longer be searched." *United States v. Williams*, 898 F.3d 323, 331 (3d Cir. 2018). "Ambiguous acts and statements do not ordinarily lend themselves to a conclusive determination of whether consent has been withdrawn." *Williams*, 898 F.3d at 331.

The dashcam footage shows that after Trooper Kolodziej asked Sam if he could search the vehicle, Sam responded, "you can search." (Exhibit A DVD, 12:20:46-12:20:47). Trooper Kolodziej then again asked Sam if he could search the vehicle and Sam responded "yes." (Exhibit A DVD, 12:20:46-12:20:47). Based on these unambiguous statements, a reasonable person would conclude that Sam consented to Tooper Kolodziej searching his entire car, including the black bag. *See Jimeno*, 500 U.S. 248, 251. Sam contends that he only consented to Trooper Kolodziej searching the car's ashtray because he had told Trooper Kolodziej that he had a "spliff" of marijuana in the car's ashtray.[4] (Doc. 40, at 9). However, while the

---

[4] Sam also contends his consent was invalid because he was unlawfully detained at the time he gave his consent. (Doc. 61, at 12). Sam does not elaborate on this point. The dashcam footage shows that Sam gave consent while standing outside of Trooper Kolodziej's vehicle. (Exhibit A DVD, 12:20:46-12:20:47). As already discussed, Trooper Kolodziej did not violate

dashcam footage does show that Sam told Trooper Kolodziej that the marijuana was in the ashtray, this does not change the fact that Sam told Trooper Kolodziej that he may search the vehicle. (Exhibit A DVD, 12:19:34-12:21:54). Accordingly, Trooper Kolodjiej's search of Sam's vehicle was constitutional, and the Court will not suppress the evidence he discovered during the search.

IV.   **CONCLUSION**

Based on the foregoing, Sam's motion to suppress statements (Doc. 37) is **GRANTED** and Sam's motion to suppress evidence (Doc. 39) is **DENIED**. An appropriate Order follows.

**Dated: September 30, 2025**                                   *s/ Karoline Mehalchick*
                                                                **KAROLINE MEHALCHICK**
                                                                **United States District Judge**

---

Sam's Fourth Amendment rights by asking Sam to exit his vehicle and wait by the passenger side of the patrol car.